[Cite as *State ex rel. Verhovec v. Marietta*, 2013-Ohio-5414.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO EX REL. | : | |
| EDWARD VERHOVEC, | : | |
| | : | |
| Relator-Appellant, | : | |
| | : | |
| STATE OF OHIO EX REL. | : | |
| DOROTHY VERHOVEC, | : | Case Nos. 11CA29, |
| | : | 12CA52, 12CA53, |
| Relator-Appellant, | : | 13CA1, 13CA2 |
| | : | |
| vs. | : | |
| | : | DECISION AND |
| THE CITY OF MARIETTA, et al., | : | JUDGMENT ENTRY |
| | : | |
| Respondents-Appellees. | : | RELEASED 12/04/2013 |

APPEARANCES:

William E. Walker, Jr., Massillon, Ohio, for Appellants.

C. Craig Woods, Squire Sanders (US) LLP, and Greta M. Kearns, Greta Kearns Law LLC, Columbus, Ohio, for Appellees.

Hoover, J.

{¶ 1} These consolidated appeals arise from two underlying lawsuits filed in the Washington County Common Pleas Court: one filed by relator-appellant Edward Verhovec against the City of Marietta and city officials in their official capacity (Washington County C.P. No. 11OT197); and the other filed by relator-appellant Dorothy Verhovec, Edward Verhovec's wife, against the City of Marietta and city officials in their official capacity (Washington County C.P. No. 11OT202).[1] Both lawsuits asserted claims for mandamus and civil forfeiture relief

---

[1] The City of Marietta and the named city officials will hereinafter be collectively referred to as "the City."

under Ohio's Public Records Act. The Verhovecs were, and continue to be represented by appellant, William E. Walker, Jr., in their respective lawsuits against the City.

{¶ 2} The trial court awarded the City summary judgment relief on the claims asserted by Dorothy Verhovec. That decision is the subject of a separate appeal before this court. *See State ex rel. Dorothy Verhovec v. The City of Marietta, et al.,* 4th Dist. Washington No. 12CA32. The trial court also granted the City's motion for judgment on the pleadings as to the claims asserted by Edward Verhovec. Following the dismissal of his claims, Edward Verhovec filed a motion for statutory damages, court costs, and attorney's fees. The City likewise filed a motion for sanctions and fees against the Verhovecs and attorney Walker in both lawsuits, contending that the lawsuits were frivolous. After permitting the parties to brief the issues, and after holding a joint hearing on the dueling motions, the trial court denied Edward Verhovec's motion for damages, court costs, and attorney's fees, but awarded sanctions against the Verhovecs and appellant Walker on the City's motion.

{¶ 3} At issue on appeal, is the trial court's judgment in favor of the City on appellant Edward Verhovec's motion for statutory damages, court costs, and attorney fees. Also at issue, is the trial court's award of sanctions against the Verhovecs and appellant Walker. For the reasons set forth below, we affirm the judgment of the trial court.

I.

FACTS

A.      *The Public Record Requests*

{¶ 4} On August 21, 2010, Dorothy Verhovec made a written public record request to Cathy Coppernol, the former Clerk of Council for the Marietta City Council. The request sought access to: (1) city council meeting minutes for each proceeding from January 1, 1990 to August 21, 2010; (2) draft meeting minutes that were handwritten by the Clerks of Council at each council meeting during the same time frame; and (3) any audio and video recordings made of those same meetings. This was the first of many public record requests made by Dorothy Verhovec, and her husband, Edward Verhovec, to the City.[2] On April 18, 2011, Edward Verhovec requested access to cable television survey data from a survey conducted by the City in 1999. The request sought access to 3,285 cable survey cards with each card containing five questions, and the 16,424 separate responses and/or non-responses to each of the five questions contained on the cable survey cards. The August 21, 2010 request and the April 18, 2011 request formed the basis of the Verhovecs' lawsuits against the City.

B.      *The Cushion Contracts*

{¶ 5} At least some of the public record requests made by the Verhovecs to the City were purportedly inspired by an agreement between Edward Verhovec and Cleveland attorney Paul Cushion. Mr. Verhovec testified at deposition that he received a letter, out of the blue, from Cushion asking if he would be interested in obtaining public records for him from different cities throughout Ohio. Mr. Verhovec subsequently entered into two contracts with Cushion to obtain from various cities either access to or copies of certain public records in exchange for payment of $1,000.00 to $4,000.00 per city. In particular, Mr. Verhovec was to be paid $1,000.00 under the Cushion contract if he were to successfully obtain Marietta City Council documents and

---

[2] For a complete list of the public record requests made by the Verhovecs, see our decision and judgment entry in Case No. 12CA32.

recordings. Attorney Cushion also provided Mr. Verhovec with form letters to aid his request for city council documents from Marietta, Uhrichsville, and Dennison; and red light camera images from Trotwood and Dayton.

{¶ 6} Dorothy Verhovec initially testified at her deposition that she had "no idea" why she signed the letter requesting the city council documents and recordings from the City. Later in her deposition, however, Mrs. Verhovec testified that she signed the letter to help her husband because he was ill. Mrs. Verhovec supposedly did not know and did not ask her husband why he wanted the records. Mrs. Verhovec also testified that she signed other public record request letters to help her husband but she had no idea why he was seeking the records.

{¶ 7} Mr. Verhovec testified at deposition that he wrote the letter, ultimately signed by his wife, requesting the city council documents and recordings. Mr. Verhovec authored the request with the purported intention of being compensated under his contract with attorney Cushion. Mr. Verhovec further testified at deposition that, with respect to the cable television survey cards, he had no interest in the records other than he "hoped to interest Mr. Cushion in those."

C.    *The City's Response to the August 21, 2010 Request and April 18, 2011 Request*

{¶ 8} The City provided Dorothy Verhovec with access to all the requested records that were in its possession; but admittedly, certain audiocassettes containing council meetings had been reused and the handwritten notes of the council meetings were not retained by the city.

{¶ 9} On July 1, 2011, the City made the cable television survey cards and responses available to Edward Verhovec for inspection. However, Mr. Verhovec had already filed his mandamus and civil forfeiture lawsuit four days earlier, on June 27, 2011.

D.    *The Lawsuits*

{¶ 10}  Following inspection of the city council records by the Verhovecs, Dorothy Verhovec filed her lawsuit seeking both a writ of mandamus compelling the City to provide access to all the requested records, and a civil forfeiture claim for every record that had been lost or destroyed.  As mentioned above, Edward Verhovec filed his lawsuit seeking mandamus and civil forfeiture just four days prior to the City providing access to all of the requested cable television survey cards and responses.

E.    *Edward Verhovec's Other Lawsuits*

{¶ 11}  In discovery it was revealed that Edward Verhovec has made numerous other public record requests and has filed many other lawsuits in the state seeking civil forfeiture awards.  For instance, Edward Verhovec testified at deposition that, in addition to the records sought from the City of Marietta, he had sought public records from the following six Ohio cities: Trotwood, Northwood, Springfield, Hamilton, South Euclid, and Dayton.  Mr. Verhovec has also filed lawsuits against Northwood, Springfield, Trotwood, and Dayton in connection to those requests.  In each of those cases, Mr. Verhovec has been represented by appellant Walker.

F.    *Evidence of a State-Wide Scheme*

{¶ 12}  The City also presented evidence to the trial court suggesting that the Verhovecs' lawsuits are part of a larger, state-wide scheme involving several individuals seeking "windfall forfeiture awards" in connection to public record requests.  For instance, the City notes that attorney Cushion is the named plaintiff in his own public records case in which he is represented by the Verhovecs' counsel, appellant Walker.  *See State ex rel. Cushion v. Massillon*, 5th Dist. Stark No. 2010CA00199, 2011-Ohio-4749.  The City has also identified a similar contract

between attorney Cushion and Timothy Rhodes, pertaining to red light traffic photo enforcement records from the City of Chillicothe. Mr. Rhodes testified at deposition that he was also solicited out of the blue by attorney Cushion to obtain those records. The Rhodes-Cushion contract ultimately resulted in Rhodes filing a mandamus and civil forfeiture lawsuit against Chillicothe. Notably, Walker represented Rhodes in the Chillicothe lawsuit.[3] Rhodes was also the relator in the Supreme Court of Ohio public records case, *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, in which he was represented by Walker.

{¶ 13} Edward Verhovec also testified at deposition that he solicited his nephew, James Verhovec, to send public record requests and to file lawsuits seeking mandamus and civil forfeiture relief. Letters that are virtually identical to the request made by Dorothy Verhovec in her August 21, 2010 letter, that were prepared by Edward Verhovec, but signed by James Verhovec, were sent to the city of Uhrichsville and the village of Dennison.[4] Those requests eventually resulted in lawsuits, filed by attorney Walker, that are almost identical to this case. *See State of Ohio ex rel. James Verhovec v. The Village of Dennison, et al.*, Tuscarawas County Common Pleas Court, No. 2011CV060708, and *State of Ohio ex rel. James Verhovec v. The City of Uhrichsville, et al.*, Tuscarawas County Common Pleas Court, No. 2011CV060707.

{¶ 14} The City has also identified numerous other lawsuits in the State of Ohio in which Walker has represented individuals seeking civil forfeiture claims related to public records requests. *See State ex rel. Davila v. Bellefontaine*, 3rd Dist. Logan No. 8-11-01, 2011-Ohio-4890; *State ex rel. Bell v. London*, 12th Dist. Madison Nos. CA2010-11-027, CA2010-11-029, 2011-Ohio-3914; *State ex rel. Davila v. Bucyrus*, 194 Ohio App.3d 325, 2011-Ohio-1731, 956

---

[3] The Chillicothe litigation recently came on appeal to this court. *See State ex rel. Rhodes v. Chillicothe*, 4th Dist. Ross No. 12CA3333, 2013-Ohio-1858.

[4] Edward Verhovec was to be paid $1,000.00 per city under his contract with Cushion, if he were able to obtain access to or copies of the council documents and recordings from Marietta, Uhrichsville, and Dennison.

N.E.2d 332 (3rd Dist.); *State ex rel. Davila v. East Liverpool*, 7th Dist. Columbiana No. 10CO16, 2011-Ohio-1347.

G.      *The Disposition of the Underlying Claims*

{¶ 15}  The trial court granted the City summary judgment on Dorothy Verhovec's mandamus and forfeiture claims, finding, inter alia, that the City had produced all of the records in its possession and that Dorothy was not "aggrieved." That decision is on appeal to this court in Case No. 12CA32.  The trial court also granted the City judgment on the pleadings on Edward Verhovec's mandamus and forfeiture claims, finding that the claims were moot because the City had produced all of the requested records (the cable television survey cards and responses).

H.      *Edward Verhovec's Motion for Statutory Damages, Court Costs, and Attorney's Fees*

{¶ 16}  Following the disposition of his underlying claims, Edward Verhovec filed a motion seeking statutory damages, court costs, and attorney's fees.

I.      *The City's Request for Sanctions*

{¶ 17}  Also following the disposition of the underlying lawsuits, the City moved for an award of fees and sanctions under R.C. 2323.51 and Civ.R. 11 on the grounds that the lawsuits were frivolous and brought in bad faith.  The Verhovecs' each subsequently filed an original action in this court seeking a writ of prohibition to prevent the trial court from applying R.C. 2323.51 (*See State ex rel. Edward Verhovec v. Washington County Common Pleas Court, et al.*, 4th Dist. Washington No. 12CA43, and *State ex rel. Dorothy Verhovec v. Washington County Common Pleas Court, et al.*, 4th Dist. Washington No. 12CA44).  We dismissed the Verhovecs'

original actions on December 17, 2012, and they have both appealed those dismissals to the Ohio

Supreme Court.

J.      *The Trial Court's December 12, 2012 Decision*

{¶ 18}  On September 10, 2012, the trial court held a joint hearing on both Edward

Verhovec's motion for statutory damages, court costs, and attorney's fees; and on the City's

motion for sanctions.  On December 12, 2012, the trial court issued a decision, which among

other things, denied Edward's motion, and granted the City's motion for sanctions.  The trial

court found the Verhovecs' lawsuits were frivolous and warranted sanctions under both R.C.

2323.51 and Civil Rule 11:

> Their objective is to prove the destruction or loss of the documents so that they
> can collect forfeiture payments and attorney fees under the Public Record Law.
> The Court finds that such action constitutes frivolous conduct which warrants the
> award of attorney fees and costs.  The Court finds that such conduct violates Civil
> Rule 11.

[December 12, 2012 Decision at 18.]

{¶ 19}  To that end, the trial court issued sanctions of $32,974.51 in Edward's case, and

$274,033.49 as sanctions in Dorothy's case, to reimburse the City's costs and attorney's fees

incurred in defending the lawsuits.  The trial court issued the sanctions jointly against the

Verhovecs and appellant Walker under R.C. 2323.51, and individually against appellant Walker

under Civil Rule 11.

K.      *The Consolidated Appeals*

{¶ 20}  The two underlying lawsuits have resulted in five appeals which we have

consolidated; as well as the separate appeal in Case No. 12CA32.

{¶ 21} In September 2011, the trial court issued a decision awarding judgment on the pleadings in favor of the City on Edward's mandamus and forfeiture claims because his claims had been rendered moot by the City's production of all the requested records. Before the trial court journalized its decision, Edward moved the court for an award of statutory damages, court costs, and attorney's fees pursuant to R.C. 149.43(C)(1). Without ruling on Edward's motion, the trial court journalized its Entry of Dismissal. Edward subsequently appealed from the Entry of Dismissal (Case No. 11CA29). On appeal, we remanded the case so that the trial court could dispose of Edward's remaining claims of statutory damages, court costs, and attorney's fees. Edward moved for summary judgment on those remaining claims in July 2012.

{¶ 22} In June and July 2012, the trial court granted summary judgment in favor of the City on Dorothy's mandamus and forfeiture claims. Dorothy has appealed that decision (Case No. 12CA32).

{¶ 23} In August 2012, the City moved for fees and sanctions under R.C. 2323.51 and Civil Rule 11 in both of the underlying lawsuits. The trial court subsequently consolidated the lawsuits and held an evidentiary hearing on September 10, 2012.

{¶ 24} On November 13, 2012, the trial court issued a decision granting the City's motion for sanctions under R.C. 2323.51 and Civ.R. 11 and denying Edward's motion for statutory damages, court costs, and attorney's fees. The decision also disposed of all other pending motions. On December 12, 2012, appellants filed appeals from that decision, even though the trial court had yet to journalize its decision (Case Nos. 12CA52, 12CA53).

{¶ 25} Also on December 12, 2012, the trial court issued an amended decision that was identical to its November 13, 2012 decision, except that it made relatively minor revisions in the

fee award calculations.  The trial court entered its final judgment on December 19, 2012.  The

appellants filed appeals from the final judgment on January 11, 2013 (Case Nos. 13CA1,

13CA2).

{¶ 26}  Meanwhile, we returned Edward's appeal on the statutory damages issues (Case

No. 11CA29) to our active docket by Magistrate's Order dated December 18, 2012.

{¶ 27}  As aforementioned, the appeal of Edward's statutory damages issues (Case No.

11CA29), the two pre-mature appeals based on the un-journalized November 13, 2012 decision

(Case Nos. 12CA52, 12CA53), and the two appeals based on the December 2012 decision and

judgment entry (Case Nos. 13CA1, 13CA2) were consolidated.

II.

ASSIGNMENTS OF ERROR

{¶ 28}  In Case Nos. 12CA52, 12CA53, 13CA1, and 13CA2, appellants Dorothy

Verhovec, Edward Verhovec, and William E. Walker, Jr., raise eight assignments of error for our

review.

First Assignment of Error:

> THE TRIAL COURT ERRED TO THE APPELLANTS' PREJUDICE WHEN IT
> MADE AN *EX POST FACTO* APPLICATION OF R.C. 149.351(C) TO
> CREATE LIABILITY RETROSPECTIVELY BASED ON THE SUBJECTIVE
> INTENT OF APPELLANTS IN VIOLATION OF R.C. 1.48 AND OHIO
> CONSTITUTITION SECTION 28, ARTICLE II.

Second Assignment of Error:

> THE TRIAL COURT ERRED TO APPELLANTS' PREJUDICE AND ABUSED
> ITS DISCRETION WHEN IT FOUND THAT APPELLANTS ACTED
> FRIVOLOUSLY WHEN THAT FINDING WAS NOT SUPPORTED BY ANY
> COMPETENT, CREDIBLE EVIDENCE BUT WAS INSTEAD BASED UPON

AN INFERENCE DRAWN SOLELY FROM ANOTHER INFERENCE IN VIOLATION OF EVID.R. 702.

Third Assignment of Error:

THE TRIAL COURT ERRED TO APPELLANTS' PREJUDICE AND ABUSED ITS DISCRETION WHEN IT ALLOWED APPELLEES TO PRESENT CHARACTER AND "OTHER ACTS" EVIDENCE OVER OBJECTION, AND USED THAT EVIDENCE TO SUPPORT ITS FINDINGS THAT PETITIONERS ACTED IN CONFORMANCE TO CHARACTER, IN VIOLATION OF EVID.R. 404.

Fourth Assignment of Error:

THE TRIAL COURT ERRED TO APPELLANTS' PREJUDICE AND ABUSED ITS DISCRETION WHEN IT FOUND THAT APPELLANTS WERE A R.C. 2323.51 PARTY SUBJECT TO SANCTIONS; EVEN THOUGH THE STATE IS THE REAL PARTY IN INTEREST; BECAUSE R.C. 2731.04 REQUIRES MANDAMUS ACTIONS TO BE MADE IN THE NAME OF THE STATE; AND THE CIV.R. 17(A) COMMANDS THAT EVERY ACTION SHALL BE PROSECUTED IN THE NAME OF THE REAL PARTY IN INTEREST.

Fifth Assignment of Error:

THE TRIAL COURT ERRED TO APPELLANTS' PREJUDICE WHEN IT ADJUDICATED A R.C. 2323.51 MOTION FOR SANCTIONS AND FOUND EACH OF THEM LIABLE WITHOUT HAVING SUBJECT MATTER JURISDICTION; BECAUSE THE UNDERLYING MATTER WAS NOT AN ORDINARY PROCEEDING BUT A SPECIAL PROCEEDING AND AS SUCH WAS NOT ONE OF THE CLASS OF CASES THAT THE TRIAL COURT COULD HEAR, IN VIOLATION OF SECTION 4(B), ARTICLE IV, OF THE OHIO CONSTITUTION.

Sixth Assignment of Error:

THE TRIAL COURT ERRED TO APPELLANTS' PREJUDICE AND ABUSED ITS DISCRETION WHEN IT OVERRULED EDWARD'S MOTION TO STRIKE APPELLEES' R.C. 2323.51 MOTION FOR SANCTIONS AGAINST EDWARD WHEN APPELLEES' MOTION FAILED TO SATISFY THE JURISDICTIONAL TIME REQUIREMENT BY NOT BEING FILED WITHIN 30 DAYS AFTER FINAL JUDGMENT, IN VIOLATION OF R.C. 2323.51(B)(1).

Seventh Assignment of Error:

THE TRIAL COURT ERRED TO APPELLANTS' PREJUDICE AND ABUSED ITS DISCRETION WHEN IT FOUND THAT R.C. 2323.51 SANCTIONS WERE APPROPRIATE BECAUSE THAT FINDING WAS NOT SUPPORTED

BY COMPETENT, CREDIBLE EVIDENCE GOING TO ALL THE
ESSENTIAL ELEMENTS OF THE CASE BECAUSE APPELLEES FAILED
TO SHOW THAT THEY PROVIDED ACCESS TO ALL THE REQUESTED
RECORDS AND THEY FAILED TO SHOW THAT THEY HAD NOT
UNLAWFULLY DESTROYED THOSE RECORDS.

Eighth Assignment of Error:

THE TRIAL COURT ERRED TO WALKER'S PREJUDICE AND ABUSED
ITS DISCRETION WHEN IT IMPOSED SANCTIONS FOR FRIVOLOUS
CONDUCT WHEN APPELLEES FAILED TO DEMONSTRATE WHAT
CONDUCT CAUSED WHICH EXPENSES; IN VIOLATION OF R.C.
2323.51(B)(5).

{¶ 29}  As it pertains to Case No. 11CA29, Edward Verhovec raises two assignments of

error for our review.

First Assignment of Error:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT GRANTING
SUMMARY JUDGMENT TO RELATOR/APPELLANT AFTER REMAND.

Second Assignment of Error:

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS
DISCRETION IN DENYING RELATOR/APPELLANT'S R.C. 149.43(C)(1)
MOTION FOR DAMAGES, COSTS AND ATTORNEY FEES BECAUSE R.C.
149.43(C)(2)(b)(i) REQUIRED THE COURT TO MAKE THAT AWARD.

III.

LAW & ANALYSIS

A.      *Edward Verhovec's Motion for Statutory Damages, Court Costs, and*

        *Attorney's Fees*

{¶ 30}  We first consider Edward Verhovec's two assignments of error pertaining to the

trial court's denial of his motion for statutory damages, court costs, and attorney's fees in case

number 11OT197.  Because the two assignments of error are interrelated – in that they both

argue that the trial court erred as a matter of law – we consider them together.

{¶ 31} R.C. 149.43(B)(1) provides, in relevant part, that "[u]pon request and subject to division (B)(8) of this section, all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours." If the public office fails to make the public records promptly available, then the requester may file a mandamus action seeking an order to compel the public office to make the records available. R.C. 149.43(C)(1).

{¶ 32} A mandamus claim is rendered moot when a relator has received all of the requested public records or has been given access to all of the records. *State ex rel. Cranford v. Cleveland*, 103 Ohio St.3d 196, 2004-Ohio-4884, 814 N.E.2d 1218, ¶ 23, citing *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 8; *Strothers v. Norton*, 131 Ohio St.3d 359, 2012-Ohio-1007, 965 N.E.2d 282, ¶ 13. "However, the production of requested documents does not, according to the Public Records Act, moot a claim for statutory damages, court costs, and attorney fees." *State ex rel. Hartkemeyer v. Fairfield Twp.*, 12th Dist. Butler No. CA2012-04-080, 2012-Ohio-5842, ¶ 12, citing *State ex rel. Cincinnati Enquirer v. Heath*, 121 Ohio St.3d 165, 2009-Ohio-590, 902 N.E.2d 976, ¶ 18.

{¶ 33} A claim for statutory damages, court costs, and attorney's fees under the Public Records Act is grounded in R.C. 149.43(C), which provides that:

> (C)(1) If a person allegedly is aggrieved by the failure of a public office or the person responsible for public records to promptly prepare a public record and to make it available to the person for inspection in accordance with division (B) of this section or by any other failure of a public office or the person responsible for public records to comply with an obligation in accordance with division (B) of this section, the person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with division (B) of this section, that awards court costs and reasonable attorney's fees to the person that instituted the mandamus action,

and, if applicable, that includes an order fixing statutory damages under division (C)(1) of this section. The mandamus action may be commenced in the court of common pleas of the county in which division (B) of this section allegedly was not complied with, in the supreme court pursuant to its original jurisdiction under Section 2 of Article IV, Ohio Constitution, or in the court of appeals for the appellate district in which division (B) of this section allegedly was not complied with pursuant to its original jurisdiction under Section 3 of Article IV, Ohio Constitution.

If a requestor transmits a written request by hand delivery or certified mail to inspect or receive copies of any public record in a manner that fairly describes the public record or class of public records to the public office or person responsible for the requested public records, except as otherwise provided in this section, the requestor shall be entitled to recover the amount of statutory damages set forth in this division if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with division (B) of this section.

The amount of statutory damages shall be fixed at one hundred dollars for each business day during which the public office or person responsible for the requested public records failed to comply with an obligation in accordance with division (B) of this section, beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand dollars. The award of statutory damages shall not be construed as a penalty, but as compensation for injury arising from lost use of the requested information. The existence of this injury shall be conclusively presumed. The award of statutory damages shall be in addition to all other remedies authorized by this section.

The court may reduce an award of statutory damages or not award statutory damages if the court determines both of the following:

(a) That, based on the ordinary application of statutory law and case law as it existed at the time of the conduct or threatened conduct of the public office or person responsible for the requested public records that allegedly constitutes a failure to comply with an obligation in accordance with division (B) of this section and that was the basis of the mandamus action, a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records did not constitute a failure to comply with an obligation in accordance with division (B) of this section;

(b) That a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records would serve the public policy that underlies the authority that is asserted as permitting that conduct or threatened conduct.

(2)(a) If the court issues a writ of mandamus that orders the public office or the person responsible for the public record to comply with division (B) or this section and determines that the circumstances described in division (C)(1) of this section exists, the court shall determine and award to the relator all court costs.

(b) If the court renders a judgment that orders the public office or the person responsible for the public record to comply with division (B) of this section, the court may award reasonable attorney's fees subject to reduction as described in division (C)(2)(c) of this section. The court shall award reasonable attorney's fees, subject to reduction as described in division (C)(2)(c) of this section when either of the following applies:

(i) The public office or the person responsible for the public records failed to respond affirmatively or negatively to the public records request in accordance with the time allowed under division (B) of this section.

(ii) The public office or the person responsible for the public records promised to permit the relator to inspect or receive copies of the public records requested within a specified period of time but failed to fulfill that promise within the specified period of time.

(c) Court costs and reasonable attorney's fees awarded under this section shall be construed as remedial and not punitive. Reasonable attorney's fees shall include reasonable fees incurred to produce proof of the reasonableness and amount of the fees and to otherwise litigate entitlement to the fees. The court may reduce an award of attorney's fees to the relator or not award attorney's fees to the relator if the court determines both of the following:

(i) That, based on the ordinary application of statutory law and case law as it existed at the time of the conduct or threatened conduct of the public office or person responsible for the requested public records that allegedly constitutes a failure to comply with an obligation in accordance with division (B) of this section and that was the basis of the mandamus action, a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records did not constitute a failure to comply with an obligation in accordance with division (B) of this section;

(ii) That a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records as described in division (C)(2)(c)(i) of this section would serve the public policy that underlies the authority that is asserted as permitting that conduct or threatened conduct.

{¶ 34} Furthermore, "[t]he Supreme Court of Ohio has established that the award of attorney fees is dependent upon an aggrieved party demonstrating that the release of the

requested public records provides a public benefit that is greater than the benefit to the requester." *Hartkemeyer* at ¶ 30, citing *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 34, and *State ex rel. Beacon Journal Publishing Co. v. Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087.  A relator is not entitled to an award of statutory damages or attorney fees if the only benefit claimed by the relator is that the Public Records Act be enforced against the respondents.  *State ex rel. DiFranco v. S. Euclid*, 8th Dist. Cuyahoga No. 97713, 2012-Ohio-4339, ¶ 9-10.  A denial of statutory damages, costs, and attorney's fees is reviewed for an abuse of discretion.  *State ex rel. Patton v. Rhodes*, 129 Ohio St.3d 182, 2011-Ohio-3093, 950 N.E.2d 965, ¶ 12.

{¶ 35}  In the case sub judice, Edward Verhovec made his written public record request to the City for the cable television survey cards and responses on April 18, 2011.  The City did not immediately respond to Mr. Verhovec's request, so on June 27, 2011, he commenced the instant action for mandamus and civil forfeiture relief.

{¶ 36}  Four days after the lawsuit was filed, on July 1, 2011, the City responded to the request and notified Mr. Verhovec that the records were available for inspection.  Shortly thereafter, Edward Verhovec moved for statutory damages, court costs, and attorney's fees.

{¶ 37}  Meanwhile, at all times relevant to this matter, the City had a public records policy that required it to acknowledge, in writing, all public record requests within three business days following the public office's receipt of the request.  It is undisputed that the City did not comply with its policy, and did not acknowledge receipt of the request in writing.

{¶ 38}  Edward Verhovec first contends that the City's failure to comply with its public records policy -requiring the public office to acknowledge a records request within three

business days – was tantamount to the City's failure to promptly provide access to the requested records as required by R.C. 149.43(B)(1).  Appellant concludes that the trial court erred in not awarding him summary judgment, because as a matter of law, he was entitled to statutory damages, court costs, and attorney's fees under R.C. 149.43(C)(1)-(2).

{¶ 39}  Edward's first argument fails, however, because in order to recover damages, costs, or fees under the Public Records Act, one must first prove a violation of the Act. *Strothers*, 131 Ohio St.3d 359, 2012-Ohio-1007, 965 N.E.2d 282, at ¶ 21 ("An award of statutory damages under R.C. 149.43(C)(1) is premised on a violation of R.C. 149.43(B).").  Simply put, before one may recover damages, costs, or fees, he must demonstrate that the respondent did not act promptly in responding to the request.

{¶ 40}  Here, Edward leaps to the conclusion that because the City failed to adhere to its acknowledgement policy, than it also failed to act promptly; and thus, he was entitled to damages, costs, and fees as a matter of law.  Edward's analysis, however, plainly contradicts established case law, which consistently has held that the determination of whether a public office or person responsible for public records has acted promptly is dependent upon the facts and circumstances of the case.  *Strothers* at ¶ 21 (finding 45 day delay reasonable); *State ex rel. McCray v. Ohio Dept. of Commerce*, 10th Dist. Franklin No. 11AP-1055, 2012-Ohio-2997, ¶ 3 (finding 60 day delay reasonable); *State ex rel. Patton*, 129 Ohio St.3d 182, 2011-Ohio-3093, 950 N.E.2d 965, at ¶ 20  (finding 56 day delay reasonable).  Thus, the proper inquiry is whether the trial court, after conducting an evidentiary hearing, abused its discretion in concluding that the City "promptly" responded to the request – an inquiry which appellant does not make on appeal.

{¶ 41}  Thus, when viewed in the proper context, the factual issue of whether the City promptly responded to the request precluded summary judgment relief.  Moreover, Edward's argument that the City's noncompliance with its acknowledgment policy resulted in a statutory breach under the Act is also without merit and does not provide a basis to recover under summary judgment.[5]

{¶ 42}  Edward next argues that the trial court improperly determined that he was not entitled to damages, costs, or attorney's fees because he was not "aggrieved."  While the trial court decision did discuss the aggrievement issue; the trial court's analysis of that issue formed the basis for its decision to issue sanctions under R.C. 2323.51 and Civ.R. 11.  The trial court never ruled, as appellant suggests, that it declined to award damages, costs, or fees on the basis that Edward was not "aggrieved."  Rather, the trial court's decision not to award damages, costs, and fees was based on the fact that the City promptly made the records available under the unique facts and circumstances of the case; and on its decision to exercise its discretion under the Act not to award the relief requested.[6]  Edward's aggreivement argument is simply misplaced.

{¶ 43}  Based on the foregoing, it cannot be said that the trial court abused its discretion in denying Edward's motion for statutory damages, court costs, and attorney's fees.  Accordingly, Edward's first and second assignments of error are overruled.

B.      *The Judgment Imposing Sanctions Under R.C. 2323.51 and Civ.R. 11*

---

[5] Edward argued that R.C. 149.43(B)(7) imposed a statutory duty on the City to comply with its acknowledgment policy.  That provision, however, simply requires public offices to comply with internal policies regarding the transmission of records "by United States mail or by any other means of delivery or transmission pursuant to this division."  The provision does not create a statutory duty for public offices to comply with any other policies pertaining to public records.

[6] *See* R.C. 149.43(C)(1) and (2), supra, granting the court discretion to decrease or decline an award of damages and fees even where a public office has violated the Act.

{¶ 44} The remaining assignments of error raised by appellants Edward Verhovec, Dorothy Verhovec, and William E. Walker, Jr., pertain to the trial court's award of attorney's fees and costs as sanctions under R.C. 2323.51 and Civ.R. 11.

{¶ 45} R.C. 2323.51 governs the award of attorney's fees as a sanction for frivolous conduct. R.C. 2323.51(A)(2) defines "frivolous conduct" to mean:

> (a) Conduct of [a] * * * party to a civil action, * * * or of the * * * party's counsel of record that satisfies any of the following:
>
> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
>
> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
>
> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

{¶ 46} R.C. 2323.51(B) authorizes a trial court to award attorney's fees to any party adversely affected by frivolous conduct; however, section (B)(1) specifies that a party make a motion for such award "not more than thirty days after the entry of final judgment in a civil action or appeal."

{¶ 47} "Courts must carefully apply R.C. 2323.51 'so that legitimate claims are not chilled.'" *Burchett v. Larkin*, 192 Ohio App.3d 418, 2011-Ohio-684, 949 N.E.2d 516, ¶ 20 (4th Dist.), quoting *Hickman v. Murray*, 2nd Dist. Montgomery No. CA15030, 1996 WL 125916, * 5 (Mar. 22, 1996). As we noted in *Burchett*, the *Hickman* court explained that:

> A party is not frivolous merely because a claim is not well-grounded in fact. *Richmond Glass & Aluminum Corp. v. Wynn* (Sept. 5, 1991), Columbiana App. No. 90-C-46, [1991 WL 172902, at *2]. Furthermore, the statute was not intended to punish mere misjudgment or tactical error. *Turowski v. Johnson* (1991), 70 Ohio App.3d 118, 123 [590 N.E.2d 434], quoting *Stephens v. Crestview Cadillac* (1989), 62[64] Ohio App.3d 129, 134 [580 N.E.2d 842]. Instead, the statute was designed to chill egregious, overzealous, unjustifiable, and frivolous action. *Turowski v. Johnson* (1990), 68 Ohio App.3d 704, 706 [589 N.E.2d 462].
>
> Whether a claim is warranted under existing law is an objective consideration. *Lewis v. Celina Fin. Corp* (1995), 101 Ohio App.3d 464, 473 [655 N.E.2d 1333], citing *Ceol v. Zion Indust. Inc.* (1992), 81 Ohio App.3d 286, 291 [610 N.E.2d 1076]. The test, we find, is whether no reasonable lawyer would have brought the action in light of the existing law. In other words, a claim is frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim.

*Burchett* at ¶ 20, quoting *Hickman* at * 5.

{¶ 48} We have held that the question of whether conduct is frivolous is a question of law that an appellate court independently reviews. *Burchett* at ¶ 22. However, if a reviewing court finds that the trial court's frivolous conduct finding is substantiated, the decision to award attorney's fees as a sanction for that conduct rests within the trial court's sound discretion. *Id*. "Consequently, we will not reverse a trial court's decision to award attorney fees for frivolous conduct under R.C. 2323.51 absent an abuse of that discretion." *Id*., citing *Riley v. Langer*, 95 Ohio App.3d 151, 159, 642 N.E.2d 1 (1st Dist.1994), overruled on other grounds in *Riston v. Butler*, 149 Ohio App.3d 390, 2002-Ohio-2308, 777 N.E.2d 857, ¶ 22, fn. 16 (1st Dist.); s*ee also Blackburn v. Lauder*, 4th Dist. Lawrence No. 96CA5, 1996 WL 666658, * 3 (Nov. 12, 1996) ("A decision to impose sanctions pursuant to this statute rests with the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion."). An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.*, 63 Ohio St.3d 498, 506, 589

N.E.2d 24 (1992); *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991).

{¶ 49} Civ.R. 11 provides that for pleadings, motions, and other documents signed by attorneys representing parties in a case, the signature of an attorney "constitutes a certificate by the attorney * * * that the attorney * * * has read the document; that to the best of the attorney's * * * knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." The rule further provides that "[f]or a willful violation of this rule, an attorney * * *, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule."

{¶ 50} "Civ.R. 11 employs a subjective bad-faith standard to invoke sanctions by requiring that any violation must be willful." *State ex rel. Dreamer v. Mason*, 115 Ohio St.3d 190, 2007-Ohio-4789, 874 N.E.2d 510, ¶ 19, citing *Riston* at ¶ 9, and *Ransom v. Ransom*, 12th Dist. Warren No. 2006-03-031, 2007-Ohio-457, ¶ 25. Thus, "[a]ny violation must be willful; negligence is insufficient to invoke Civ.R. 11 sanctions." *Oakley v. Nolan*, 4th Dist. Athens No. 06CA36, 2007-Ohio-4794, ¶ 13.

{¶ 51} "The United States Supreme Court has observed that the purpose of Fed.R.Civ.P. 11, which is analogous to Civ.R. 11, is to curb abuse of the judicial system because '[b]aseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay.' *Cooter & Gell v. Hartmarx Corp.* (1990), 496 U.S. 384, 398, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The court noted that the specter of Rule 11 sanctions encourages civil litigants to ' "stop, think and investigate more carefully before serving and

filing papers." ' Id., quoting Amendments to Federal Rules of Civil Procedure (1983), 97 F.R.D. 165, 192 (March 9, 1982 letter from Judge Walter Mansfield, Chairman, Advisory Committee on Civil Rules)." *Moss v. Bush*, 105 Ohio St.3d 458, 2005-Ohio-2419, 828 N.E.2d 994, ¶ 21.

{¶ 52} "We will not reverse a court's decision on a Civ.R. 11 motion for sanctions absent an abuse of discretion. *State ex rel. Fant v. Sykes* (1987), 29 Ohio St.3d 65, 29 OBR 446, 505 N.E.2d 966. An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Worrell v. Ohio Police & Fire Pension Fund*, 122 Ohio St.3d 116, 2006-Ohio-6513, 858 N.E.2d 380, ¶ 10." *Mason* at ¶ 18.

{¶ 53} For their first assignment of error, appellants' contend that the trial court erred by making a retrospective and *ex post facto* application of R.C. 149.351(C) to support its finding that the appellants acted frivolously.

{¶ 54} R.C. 1.48 provides that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." Section 28, Article II of the Ohio Constitution provides, inter alia, that "[t]he General Assembly shall have no power to pass retroactive laws * * *."

{¶ 55} R.C. 149.351(C) became effective on September 29, 2011, after the Verhovec lawsuits had been filed in the trial court. R.C. 149.351(C)(2) provides:

> In a civil action under division (B) of this section, if clear and convincing evidence shows that the request for a record was a pretext to create potential liability under this section, the court may award reasonable attorney's fees to any defendant or defendants in the action.

{¶ 56} Here, appellants' first assignment of error fails for the simple fact that the trial court did not rely upon R.C. 149.351(C)(2) when it awarded sanctions. Rather, the sanctions were clearly awarded under the frivolous conduct statute, R.C. 2323.51, and Civ.R. 11.

Accordingly, there is no basis to support the appellants' contention that the trial court retrospectively applied R.C. 149.351(C)(2). Appellants' first assignment of error is overruled.

{¶ 57} For their second assignment of error, appellants' contend that the trial court erred when it allegedly stacked inference upon inference to support its conclusion that they engaged in frivolous conduct.[7]

{¶ 58} The trial court determined that appellants acted frivolously because "[t]heir objective is to prove the destruction or loss of the documents so that they can collect forfeiture payments and attorney fees under the Public Records Law. The Court finds that such action constitutes frivolous conduct which warrants the award of attorney fees and costs."

{¶ 59} A trier of fact may not draw an inference based entirely upon another inference. Rather an inference must rest upon a fact supported by evidence. *State v. Cowans*, 87 Ohio St.3d 68, 78, 717 N.E.2d 298 (1999); *Estate of Holley v. Am. Family Life Assur. Co. of Columbus*, 4th Dist. Pickaway No.04CA5, 2005-Ohio-2281, ¶¶ 25-29.

{¶ 60} The Ohio Supreme Court has cautioned courts about the application of the rule against stacking inferences:

> At this juncture, we take the opportunity to remark that the rule forbidding the stacking of an inference upon an inference is disfavored by scholars and many courts. If such a rule were uniformly enforced, ' * * * hardly a single trial could be adequately prosecuted.' 1A Wigmore, Evidence (Tillers Rev.1983) 1106, 1111, Section 41. See, also, *United States v. Eustace* (C.A. 2, 1970), 423 F.2d 569, 571. 'Today most students of the problem of inference recognize that *any* single vision about the world or conclusion of fact rests on a *multitude* of inferences, premises, and beliefs, on a large complex of assumptions, and on a

---

[7] Appellants' specifically contend that the trial court abused its discretion in making the frivolous finding because the finding was not supported by competent, credible evidence; but instead, was based upon the stacking of one inference upon another. To the extent that appellants are challenging the frivolous finding under R.C. 2323.51, the question of whether conduct is frivolous is a question of law that an appellate court independently reviews. *See* ¶ 48, supra.

body of implicit or explicit principles by which the human organism perceives, organizes, structures, and understands experience; thus it is generally conceded that it is meaningless to denounce multistaged or cascaded inferences.' (Emphasis *sic*.)  Wigmore, *supra*, at 1112, fn. 3, Section 41.  The rule is now rejected in most federal circuit courts.  See Louisell & Mueller, Federal Evidence (1977) 646, 666, Section 94 (referring to the rule as 'spurious').  Even those courts that have preserved the rule have commented that it is too frequently misunderstood, or misused as a convenient means of excluding evidence regarded as too remote, speculative or uncertain to be of probative value.  See *Hurt*, *supra*, 164 Ohio St. at 331-332, 130 N.E. 820; *Orey v. Mut. Life Ins. Co.* (1939), 215 Ind. 305, 309-310, 19 N.E.2d 547, 548-549.  * * * We therefore caution the bench and bar against resorting to this rule too readily and without a sufficient awareness of its pitfalls.

*Motorists Mut. Ins. Co. v. Hamilton Twp. Trustees*, 28 Ohio St.3d 13, 17, 502 N.E.2d 204

(1986).

{¶ 61}  We have reviewed the record, and we independently conclude that the appellants' conduct was frivolous.  Despite appellants' arguments, the City was able to put forth sufficient evidence that the Verhovecs, and appellant Walker, feigned their intent to access the public records through the guise of the Cushion contract when their actual intent was to seek forfeiture awards.  Such conduct is frivolous because the lawsuits were brought for an "improper purpose," and because the Verhovecs were not "aggrieved" persons for purposes of civil forfeiture damages as that term was defined by the Ohio Supreme Court in *State ex rel. Rhodes v. New Philadelphia*.

{¶ 62}  All of the evidence in the instant case indicates that the appellants are involved in an intricate scheme to take advantage of the Public Records Act, specifically the civil forfeiture provision, by seeking to prove the improper destruction of voluminous and archaic public records.  The only explanation offered by the appellants to rebut this conclusion, is that the records were sought by Edward Verhovec to fulfill his contracts with attorney Cushion.  Yet, Mr. Verhovec testified that he was unsure of what exactly needed to be produced in order to collect

payment under the contracts.  Moreover, it is undisputed that the cable television survey cards and responses were not required to be produced for any Cushion contract.  Mr. Verhovec tried to explain that he sought the cable television records because he thought they may interest Mr. Cushion.  Yet, even after learning that Cushion was not interested in the records he still pursued his lawsuit for civil forfeiture damages; and after he verified that all the survey cards were present, he no longer had any interest in the cards.  Mr. Verhovec has also filed numerous other lawsuits throughout the state seeking forfeiture damages.  Absent the Cushion contracts, there are no logical explanations for these lawsuits.  The Verhovecs are not historians.  They have never resided in the City of Marietta.  Mr. Verhovec had not even heard of the Public Records Act prior to being contacted by attorney Cushion "out of the blue."  Mr. Verhovec is also the driving force behind the lawsuits filed by his nephew, James Verhovec, against the Village of Dennison and the City of Uhrichville.  Those lawsuits also seek significant forfeiture damages.  We also cannot ignore the connections between Walker and Cushion.  Walker represented Cushion in Cushion's very own civil forfeiture lawsuit.  Walker also represented Timothy Rhodes in the Chillicothe lawsuit, in which Rhodes allegedly sought the records to fulfill his contract with Cushion.  Finally, Walker represents James Verhovec in his lawsuits against Uhrichsville and Dennison.

{¶ 63}  The lawsuits at issue in this case, the James Verhovec lawsuits, and the Timothy Rhodes Chillicothe lawsuit were all allegedly commenced so that the parties could retrieve the necessary documents required under the Cushion contracts.  Both Rhodes and Edward Verhovec were allegedly contacted out of the blue by attorney Cushion; and while the Verhovecs' deny having a relationship with Rhodes both the Verhovecs and Rhodes are represented by Walker.  Moreover, Walker has represented Cushion in Cushion's very own public records lawsuit.

Appellants would have us believe that this is a matter of coincidence; but we cannot ignore the connections.  Based on the foregoing evidence, the trial court's conclusion that the appellants' true intent was to prove the nonexistence of the records so that they could collect the forfeiture awards is reasonable; and, it is a conclusion that we share with the trial court.[8]  As such, there is no doubt that the lawsuits were frivolous, as the law defines that term.

{¶ 64}  In sum, we conclude that the appellants have no interest in the requested records other than to build a case for forfeiture and reimbursement of attorney's fees.  To the extent that our conclusion rests on any inferences, they are reasonable inferences that are supported by the record.  In light of the foregoing, the trial court correctly concluded that the appellants acted frivolously by pursuing litigation for such an improper purpose.

{¶ 65}  Appellants also contend that it is improper to consider their motives for requesting the records when determining whether their conduct is frivolous.  In the context of a mandamus claim, the requester's motive is indeed irrelevant.  *See New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, at ¶ 20 ("[A] public office is obligated to honor a records request by 'any person' and that a person does not have to explain his or her reasons for wanting to inspect and copy a public record in order to validity request the record."); *see also* R.C. 149.43(B)(4) (prohibiting public office from conditioning availability of records by requiring disclosure of the requestor's identity or purpose).  However, both of the lawsuits also sought civil forfeiture damages.  While "any person" may make a public records request under R.C. 149.43(B), the Supreme Court of Ohio has rejected the notion that "any person" can recover

---

[8] At least one other Ohio court has alluded to a similar scheme involving Rhodes, and others.  Represented by attorney Walker, and nicknamed the "Public Records Police," the Twelfth District Court of Appeals noted that the group "sought to become some of the highest paid 'police' in Ohio" through their forfeiture actions.  *State ex rel. Bell v. London,* 2011-Ohio-3914 at ¶ 42 ("Bell, Davila, and Rhodes refer to themselves as the 'public records police,' and relying on the civil forfeiture provision in R.C. 149.351(B)(2) * * * have sought to become some of the highest paid 'police' in Ohio.").

forfeiture under R.C. 149.351. *State ex rel. Rhodes v. Chillicothe*, 2013-Ohio-1858 at ¶ 43,

*citing New Philadelphia* at ¶¶ 20, 23. "We cannot ignore the General Assembly's use of the term

'aggrieved,' and we conclude that the General Assembly did not intend to impose forfeiture

when it can be proved that the requester's legal rights were not infringed, because the requester's

only intent was to prove the nonexistence of the records." *New Philadelphia* at ¶ 23.

{¶ 66} Thus, it is proper to consider the appellants' motives, because their motivations

are relevant in determining whether they are actually aggrieved for purposes of civil forfeiture

relief, or rather, as in here, the lawsuits were brought for the improper purpose of proving the

nonexistence of the records.

{¶ 67} Based on the foregoing, appellant's second assignment of error is overruled.

{¶ 68} For their third assignment of error, appellants' contend that the trial court violated

Evid.R. 404(B) by considering improper "character evidence" and "other acts" evidence in

making its frivolous conduct finding.

{¶ 69} Evid.R. 404(B) provides in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character
of a person to show action in conformity therewith. It may, however, be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 70} "[T]he decision to admit Evid.R. 404(B) prior acts evidence rests in the trial

court's sound discretion and that decision should not be reversed absent an abuse of discretion."

*State v. Hairston*, 4th Dist. Scioto No. 06CA3089, 2007-Ohio-3707, ¶ 38; *see also State v. Bey*,

85 Ohio St.3d 487, 490, 709 N.E.2d 484 (1999).

{¶ 71}  Appellants' argue that "Evid. R. 404(B) justifies the preclusion of character evidence and 'other acts' evidence in this case."  However, they make no effort to identify which evidence was allegedly improper under the rule.  Thus, it is impossible for us to determine whether the trial court abused its discretion.  Moreover, it is not our duty to make an argument for the appellant.  *In re A.Z.*, 4th Dist. Meigs No. 11CA3, 2011-Ohio-6739, ¶ 18; *State v. Nguyen*, 4th Dist. Athens No. 12CA14, 2013-Ohio-3170, ¶ 37; App.R. 16(A)(7).  Accordingly, we reject appellants' argument and overrule their third assignment of error.

{¶ 72}  For their fourth assignment of error, appellants' contend that they are immune from sanctions under R.C. 2323.51 because they are not purportedly the real party interest. Instead, they contend that the State of Ohio is the real party in interest because the Verhovecs brought their actions in mandamus.

{¶ 73}  R.C. 2323.51(B)(4) provides that: "An award made pursuant to division (B)(1) of this section may be made against a party, the party's counsel of record, or both."  Appellants contend that since the lawsuits were required to be brought in the name of the state on relation of the petitioner, the state, and not the petitioner, is the party for purposes of R.C. 2323.51.

{¶ 74}  Appellants, however, completely ignore existing case law from the Ohio Supreme Court, which upheld sanctions under R.C. 2323.51 against a party that brought a mandamus action to compel public records under R.C. 149.43.  *See State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19.  Furthermore, appellants have not cited a single case in support of the proposition that a requestor bringing a mandamus action under the Public Records Act is immune from sanctions under R.C. 2323.51.

{¶ 75}  Rather, the case law cited by appellants' supports the proposition that where the object of a mandamus action is to enforce a public right, the state is regarded as the real party in interest.  But here, in addition to their mandamus actions, appellants sought civil forfeiture awards, statutory damages, attorney's fees, and costs.  The intended purpose of the lawsuits was to line the appellants' pockets to the detriment of the City; not to serve a broader public interest of the state.

{¶ 76}  Accordingly, appellants' argument that they are immune from sanctions for their frivolous conduct simply because their claims sound in mandamus is without merit.  Their fourth assignment of error is overruled.

{¶ 77}  For their fifth assignment of error, appellants' contend that the trial court lacked subject matter jurisdiction to award sanctions under R.C. 2323.51 because that statute applies only to "civil actions" and a mandamus action is not a "civil action."

{¶ 78}  The Verhovecs made nearly identical arguments to this court in their prohibition actions (Case Nos. 12CA43, 12CA44).  In those cases, we expressly rejected the argument, and instead we held that a mandamus action under the Public Records Act is a "civil action" for purposes of R.C. 2323.51:

> * * * Verhovec alleges that the trial court and Judge Boyer do not have jurisdiction to address the merits of Marietta's sanction motion under R.C. 2323.51, because that statutory provision applies only to "civil actions" and a mandamus action is not a "civil action."  Verhovec is wrong for two reasons. First, a mandamus action is a civil action. *State ex rel. Spirko v. Court of Appeals*, 27 Ohio St.3d 13, 501 N.E.2d 625 (1986)("A proceeding for a writ of mandamus is a civil action"); *State ex rel. Wilson v. Preston*, 173 Ohio St. 203, 208, 181 N.E.2d 31 (1962)("an action for a writ of mandamus is a civil action"); *State ex rel. Karmasu v. Tate*, 83 Ohio App.3d 199, 206 (4th Dist. 1992)("Mandamus is a civil action").  The frivolous conduct statute, R.C. 2323.51, states that it is applicable to certain conduct, including the conduct of "filing of a civil action … or the taking of any other action in connection with a

civil action. …" Thus, that statutory provision can be employed to request sanctions for frivolous conduct occurring within the context of a civil action seeking a writ of mandamus. *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 214 (upholding the lower court's award of sanctions for frivolous conduct under R.C. 2323.51 in a mandamus action brought to compel public records under R.C. 149.43).

*State ex rel. Edward Verhovec v. Washington County Common Pleas Court, et al.*, 4th Dist. Washington No. 12CA43, Dec. 17, 2012 Decision and Judgment Entry at 3-4; *State ex rel. Dorothy Verhovec v. Washington County Common Pleas Court, et al.*, 4th Dist. Washington No. 12CA44, Dec. 17, 2012 Decision and Judgment Entry at 3-4.

{¶ 79} Appellants have not identified any authority that would call into question our earlier decisions. Thus, for the reasons stated in Case Nos. 12CA43 and 12CA44, we overrule appellants' fifth assignment of error.

{¶ 80} For their sixth assignment of error, appellants' contend that the trial court erred to Edward and Walker's prejudice when it failed to dismiss the City's motion for sanctions in case No. 11OT197, because the motion was purportedly untimely.

{¶ 81} R.C. 2323.51(B)(1) permits a party to file a motion for sanctions "at any time not more than thirty days after the entry of final judgment." Appellants argue that the City was required to file its motion within 30 days of the trial court's September 26, 2011 order, which granted the City's motion for judgment on the pleadings. That order, however, was not a "final judgment."

{¶ 82} The time period for filing a frivolous conduct claim under R.C. 2323.51 runs from the entry of the "final appealable order." *Soler v. Evans, St. Clair & Kelsey*, 94 Ohio St.3d 432, 436, 763 N.E.2d 1169 (2002). An order must meet the requirements of R.C. 2505.02 to constitute a final, appealable order. *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86,

88, 541 N.E.2d 64 (1989).  Under R.C. 2505.02(B)(1), an order is a final order if it "affects a substantial right in an action that in effect determines the action and prevents a judgment[.]"  To determine the action and prevent a judgment, the order "must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the court."  *Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147, 153, 545 N.E.2d 1260 (1989).

{¶ 83}  Additionally, if the case involves multiple parties or multiple claims, the court's order must meet the requirements of Civ.R. 54(B) to qualify as a final, appealable order.  *See Chef Italiano Corp.* at 88.  Under Civ.R. 54(B), "[w]hen more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay."  Absent the mandatory language that "there is no just reason for delay," an order that does not dispose of all claims is subject to modification and is not final and appealable.  *Noble v. Colwell*, 44 Ohio St.3d 92, 96, 540 N.E.2d 1381 (1989); *see* Civ.R. 54(B).  The purpose of Civ.R. 54(B) is " 'to make a reasonable accommodation of the policy against piecemeal appeals with the possible injustice sometimes created by the delay of appeals[,]' * * * as well as to insure that parties to such actions may know when an order or decree has become final for purposes of appeal * * *."  *Pokorny v. Tilby Dev. Co.*, 52 Ohio St.2d 183, 186, 370 N.E.2d 738 (1977), quoting *Alexander v. Buckeye Pipe Line Co.*, 49 Ohio St.2d 158, 160, 359 N.E.2d 702 (1977).

{¶ 84}  Here, the September 26, 2011 Order was not a "final order" under R.C. 2505.02 because it did not dispose of Edward's motion for statutory damages, costs, and attorney's fees.

*See* Case No. 11CA29 (Dec. 16, 2011 Magistrate's Order). Furthermore, the September 26, 2011 Order did not satisfy the requirements of Civ.R. 54, because it disposed of fewer than all of the claims and it did not certify that there were no just reason for delay. Thus, the September 26, 2011 Order was not a "final appealable order," and it did not trigger the 30-day deadline under R.C. 2323.51.

{¶ 85} Appellants' argument that the September 26, 2011 order was labeled a "final appealable order," is also without merit. A trial court's labeling of an entry as a "final appealable order," is not dispositive of the issue. *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990) ("Generally, the question of whether an order is final and appealable turns on the effect which the order has on the pending action rather than the name attached to it, or its general nature.").

{¶ 86} The City filed its motion for sanctions against Edward Verhovec and attorney Walker in Case No. 11OT197 on August 16, 2012. The trial court did not enter final judgment in that case until December 17, 2012. The City's motion was clearly filed within the statutory deadline. Accordingly, we overrule appellants' sixth assignment of error.

{¶ 87} For their seventh assignment of error, appellants' contend that the trial court erred in finding the lawsuits frivolous under R.C. 2323.51 and Civ.R. 11, because such a finding was not supported by "competent, credible evidence."

{¶ 88} We have already concluded, in response to appellants' second assignment of error, that the appellants' conduct was frivolous. We noted that our conclusion was supported by sufficient evidence in the record, and was not the result of speculation or inference stacking. We

defer to our analysis above, and hold that there is adequate evidence to support a finding of frivolousness under R.C. 2323.51 and Civ.R. 11.

{¶ 89} Appellants' further contend that their mandamus claims were legitimate, and thus not frivolous, because (1) the City did not respond to Edward's request until four days after the filing of suit; and (2) the City did not provide Dorothy with all of the requested records. However, appellants' lawsuits also contained a claim for civil forfeiture, and it is clear that they had no interest in the records other than to prove their destruction so that they could collect forfeiture awards and attorney's fees. The mandamus claims were simply a prerequisite to obtaining forfeiture awards for the allegedly destroyed records.

{¶ 90} In sum, there is sufficient evidence in the record demonstrating a contrived and concerted effort amongst the Verhovecs, attorney Walker, attorney Cushion, and others, to take advantage of the civil forfeiture statute for purely pecuniary gain. Appellant's seventh assignment of error is overruled.

{¶ 91} For their eighth and final assignment of error, appellants' contend that the trial court erred by failing to segregate out the specific fees that were attributable to the appellants' frivolous conduct. In their own words: " * * * Appellees failed to show what conduct caused which expenses. * * * Therefore, it cannot be determined which expenses were reasonably incurred by what frivolous conduct."

{¶ 92} Appellants' argument focuses on the fact that the City did not identify which attorney's fees were attributable to the mandamus claims, and which fees were attributable to the defense of the forfeiture claims. Essentially, appellants' argument is premised on the notion that

the mandamus claims were not frivolous, and thus, the City is not entitled to reimbursement of the cost to defend those claims (see assignment of error seven).

{¶ 93}  As noted above, a trial court's award of attorney's fees as sanctions under R.C. 2323.51, is reviewed for an abuse of discretion.  Similarly, an award of attorney's fees under Civ.R. 11 is reviewed under the abuse of discretion standard of review.

{¶ 94}  Here, the trial court found that the lawsuits were frivolous in their entirety. Because the trial court determined that the lawsuits were entirely frivolous, it was not necessary to determine which fees were attributable to the defense of the mandamus claims, and which fees were attributable to the forfeiture claims.  Accordingly, it cannot be said that the trial court abused its discretion.  Appellants' eighth assignment of error is overruled.

IV.

CONCLUSION

{¶ 95}  For the foregoing reasons, appellant Edward Verhovec's two assignments of error pertaining to the denial of his motion for statutory damages, court costs, and attorney's fees are overruled. Likewise, appellants' joint assignments of error relating to the imposition of sanctions against them for frivolous conduct are also overruled.  Accordingly, the judgment of the trial court is affirmed.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED.  Appellants shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J:  Concurs in Judgment and Opinion.
McFarland, P.J.: Concurs in Judgment Only.


For the Court

By:_____
            Marie Hoover, Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.